www.LipomaCyst.com www.LipomaCyst.com IPP IPP You're reserving three. Yes, sir. I'll let you know start running into it Good morning. Your honors. May please the court Two errors of claim construction made below require the judgment be vacated here First the district court erred in construing the disposed within claim limitation to require the test strips be disposed Entirely within the flow control channel thereby excluding the preferred embodiment of the patent the claims use nearly identical language as the Specification as a specification when it's referring to the preferred embodiment of figure three Disposed within the claims the assay test strip is disposed within the flow control channel in the specification in column five referring to figure three The assay sample fluid control in this embodiment of the invention is Accomplished by disposing assay test strip 22 within a flow control channel There's no reason to started with your strongest evidence for sure that that's language in Specification is the strongest evidence to support you on claim construction but what about the plain claim language and the plain claim language saying for example that the fluid has to contact the loading zone at the at a particular location at the I guess the Flow control channel at the liquid pervious side Yes And that would be met whether the claim whether the test strip protrudes Or whether it's flush with in either case it's going to contact at the opening or the liquid pervious side Your view is that the claim doesn't say only at the liquid pervious side so so do I understand correctly that when you flip this thing over you flip it over and if the loading zone is Protruding out it will immediately be contacted by the liquid when it's flipped over Right because it's sitting outside of the channel. Yes, and in fact the figures are a little There is no figure in the patent There's a figure three which shows the flow control channels and the test strips disposed within With the test strips protruding now that is shown with the test trip sticking up, but in the in the embodiment That's claimed. Which is shown finally in figure six that figure three is turned over so the flow control channels are Are disposed with their opening toward the base? per the claim You're saying figure six is flipped over big in figure six What you see in figure three is? flipped over So The test strips The flow controls or channels are in the container such that they're opened end is oriented toward the base The dumb question I thought that the specification said that you would take the whole container and flip it over meaning that that top 45 should be on the bottom if it's flipped that that's that's the embodiment of figure seven okay, and with a At the very end of the prosecution history the examiner and examiners amendment Limited the claims to only the embodiment of figure six so in in figure seven yes figure three would be placed within the container as Here with the test strip sticking up the sample would be added and then a user would quickly Turn it over and it would be like figure six function like figure six So where's the loading zone in figure six it's down there at the bottom Yes, and it's shown as sort of the cross hatched in figure three. It's at the Opening of the liquid pervious side and so whether the test strip protrudes or it's flush with it's going to contact at the liquid pervious side and in fact when that At a point during the prosecution most of the prosecution the claim said the test strip is disposed so that the test strip is either flush with or protrudes from and later in the prosecution that limitation is is removed making the claims only broader in that respect and this term Contact at the liquid pervious side is added to to make the claims read properly at the same time That amendment was made The applicants stated in their remarks that the device of the present invention is shown in figures three through seven So completely inconsistent with some amendment that would exclude the preferred embodiment of figures three through seven page a 1 1 6 1 5 There's some language that says it's contrasting of course the cut tidings prayer And it says in contrast The present invention provides a physical channel whereby the fluid may enter the channel to directly the contact the test strip Only through the liquid pervious side What about that language only there's one other location? It's also at page 1 1 6 5 1 you have the language only in describing to the patent office how your Invention operates what what does how do you respond to that? Why doesn't that show that your invention should be limited to strips that don't protrude? The The claims are open-ended comprising and that the sample will be delivered to the sample loading zone by entry through Whether it contacts it before or not The sample will still be delivered to the test strip by entry through that open You're saying that's the only way the fluid can enter the channel even if the loading zone gets Yeah, it otherwise yes, and and This that language of The sample is delivered directly to the sample loading zone of the assay test strip through a liquid pervious side Was mentioned also during the prosecution history when the the claims recited a Test strip that was either flush with or protrudes from So the other thing is using that same language During prosecution when it could have been either then that limitation is removed claim can only get broader from that and repeatedly during Prosecution the applicant said the device of the present invention is shown in figures three through seven The district court never acknowledged that statement in coming to its conclusion. The district court never acknowledged that that a Disclaimer or disavow must be clear and unmistakable. I Understand that you're right that a disclaimer or disavow must be clear and unmistakable But is that really the standard that we would look to so we're looking through intrinsic evidence to try to determine the meaning of a claim So you look at the plain claim language you look at the spec you look at the prosecution history and Your position is that when the court looks at the prosecution history, it can only rely on it If there's a clear disclaimer, is that your position? well, the plain and ordinary meaning controls unless there's lexicography or a disclaimer and when we look at the Specification the plain and ordinary meaning per the specification Disposed within would encompass something that protrudes So you're going to get way again to weigh against that strong evidence in the Specification that there would have to be it would have to be pretty a disclaimer I think it's to find a disclaimer of any cases that actually say that I Mean I think the cases are legion to say that the plain and ordinary meaning of claim language controls except this if there's lexicography or a clear and unmistakable disclaimer I think Opposing counsel would say plain and ordinary meaning of the plain claim language isn't just entirely disposed within the channel It's entirely disposed within the channel. So that that there's some other language that says so that the liquid comes through Enters the channel at a particular location they rely on other language to take the position that the plain and ordinary meaning is not just limited to Disposed within the Channel, correct? They rely upon contact at the opening which would be met whether the test strip protrudes or not and they Delivery through they also rely upon the applicants consistently stated that delivery through occurred Even when the claims called for the test strip being either flush with or protruding there from I mean Can I ask you some do you have more points you want to make about this claim term? I would do when I ask you some questions about equalized pressure equivalent pressure Well, no, I Turn to equal one of the things that concerns me about the equivalent pressure argument Is that in the prosecution history repeatedly? There's reference to the invention working because the pressure is equalized What does equalized mean? Well That's also in the context of the specification using only the word equilibrium in this in describing this concept of Pressure equilibrium within and without flow control channel So I think there's six different instances where the specification uses the term equilibrium and And then and and yes the the Specification does refer to equalized pressure, but it's also refers to equilibrium And if I could for example point to court to page 11672 of the prosecution history and I think that is particularly instructive on 11672 in the same paragraph the applicant uses the term equivalent and pressure equilibrium To describe the concept of the ambient pressure Being used to prevent excess sample fluid from flooding the test strip And so we have the specification consistently using Equilibrium well you say consistently, but I can point out like five or six places where you say equalized pressure So at page one one six one four You say the invention utilized equalized pressure within and without the flow control chamber To prevent assay sample fluid from flooding the chamber and then at page one one six one five We have again equalized pressure Would you draw a distinction between equal and equalized? Because the other side seems to say it has to be exactly that's their argument right and to me equalized is a verb Equalized refers more to a balance the claims use the word equivalent Not equal I Mean we we were we were prepared to go to trial on the plain inordinary meaning of it of equivalent Which has a common understanding that it that encompasses Different things that may be different, but have the same effect So for example the doctrine of equivalence Equivalent we were going to trial with the plain inordinary meaning of equivalent when the district court announced well I don't know why I don't just define it as equal. Just so you know you're in your rebuttal. Thank you and So we brief the issue and then the district court ultimately concluded equivalent Means equal full stop and instructed the jury that that way and told the jury twice that you must follow the instructions Now we we asked as an alternative We said well if you're going to go to these dictionaries and define equivalent as simply equal well Let's look at the dictionaries where it say it's it's equal to or has the same effect as which is also supported by the dictionaries that the Appellees cite and the district court rejected that alternative as well And then followed through with an instruction that changing equivalent to equal to full stop nothing more I have another question for you which is the Patent refers to repeatedly no pressure gradient having no pressure gradient right and also I think there's something in the claim to that effect not that exact words. What does that mean? Eliminating a pressure gradient that would cause excess sample to flow into the channel and flood the test room So it doesn't mean your view is no pressure gradient doesn't mean that the difference in pressure is zero It's the it's a it's an elimination of a pressure gradient. That's going to cause flooding anyway, it's a basic concept that if you have a a Cup of water that there's a gradient of pressure as you go down The pressure gets deeper someone goes in a pool the pressure gets deeper as you go So there is a pressure gradient in just a container of fluid But the pressure gradient that the claims is talking about eliminating is a pressure gradient That's going to cause flooding of the test strip this you're relying on the language eliminating a pressure gradient along which excess sample fluid could flow Yes Again your answer is no that doesn't mean it has to be zero difference in pressure pressure gradient has a different meaning I'm asking because I didn't really see it anything in the record that told me what a pressure gradient is it's it's a pressure gradient that's going to cause flow of fluid excess sample fluid and So we submit that the district court erred by just simply changing equivalent to equal to which required some sort of mathematical Precision to the prejudice of Rembrandt there's no further questions. I've preserved whatever I might have left, okay I'll let you have two minutes. We ate. I'll let you have two minutes on You Thank You judge Wallach and may it please the court Jason Wilcox on behalf of the leader To answer your question judge stole about whether the prosecution is only relevant if there is a disavow I think the case that you're looking for which we cite in our briefs is Aventis that 715 f3rd at 13 Excuse me at 1373 And it makes the prosecution History is relevant for providing the context for the claim so you can understand what the ordinary meaning is to a person of skill In the art, so we don't have to win on disclaimer here for the prosecution history to be relevant Although we do think that there was a clear and unmistakable disclaimer by removing the protrudes from language from the claim But let me start with the plain language. Let me start with some questions, okay? on page 45 of the blue brief Rembrandt says There's an quote. There's no debate the preferred embodiment shown in the patent Figures included includes protruding press test strips. Do you dispute that? No, I agree that the embodiments and figures three through seven show protruding test strips, okay on page 21 of the red brief you say quote Flippantly dismissing the need for such measurements Rembrandt's expert asked why would I want to measure pressure? Why is that flippant? Well, I think in the context of what he is saying he is being flippant He's being he's responding to our expert testimony where expert has measured the pressures Inside the and outside the flow control channels explained why those important and why it shows that there is Not equivalent presence here, but instead different pressures that do create a pressure gradient and his response is well Why would I want to measure pressure? well you'd want to measure pressure to know whether the pressures are equivalent whether the pressures are in equilibrium with each other and whether the Pressures are equal to each other on page 23 of the red ring You say due to its design The I cup would not function properly with equal pressures It requires different pressures Where's that shown? So I think that's shown at several places your honor our expert testified At appendix 10 9 7 6 to 10 9 7 7 that the I cup requires that He said the same thing at 10 9 6 9 to 10 9 7 0 His entire testimony was the I cup needs a pressure gradient and it needs different pressures And that the reason why you don't get flooding is because there's a greater pressure inside the flow control channel Then outside the flow control channel that stops the fluid from flowing between the outside and the inside if they're equalized Is there a greater pressure? If they are equalized there isn't a greater pressure if they're equalized there is no pressure gradient there And the pressures are the same as the district court recognized in its construction That that's what equalized means is the dictionaries we cite judge walk and also the difference between equal and equalized is there not? I agree that they are different words. They shared the same root and if you look at the dictionaries that we cite they define equalized as Meaning equal in value equal in force So while one is a verb and one is I think a noun they they have the same meaning as the district court recognized And as courts have recognized including the Trist pharmaceutical case that we cite and the Bullard versus General Electric case that we cite in our briefs And you know the three or four dictionaries that we also cite in our briefs all treat Equivalent as a synonym for equal and so and the applicants themselves if you look at appendix 11 questions, I know My brethren sister and you too, okay? Don't run on too much on page 35 of the red brief You say that the fluid would instead enter the strip through the protruding portion of the sample loading zone You didn't cite anything to support that what's your record evidence well, I think you're right We don't cite anything to say that because this is ultimately claim construction judge well but I think it stands to reason if you have a protruding strip that sticks when you have this flipped over as My friend on the other side said so that it's actually pointing down the protruding strips are at the bottom So if you have a protruding strip the first place, it's going to contact the liquid It's inside the cup is at that protrusion. Okay. Let me get to what? Bothers me a lot and that is in the yellow brief Rembrandt says finally it's worth noting that a layer state quote It is and they're citing page 39 yours it is unclear whether applicants even recognize their amendments Would exclude their preferred embodiment from the scope of the claims Okay, and they say then of course applicants did not recognize any exclusion in their preferred and bond Embodiment they consistently said the opposite and then they go on to say hey That's not a disclaimer in any case and it seems to me. That's a huge hole in your argument How do you deal with that? Well, I think that we deal with that in two ways judge Well, I think the first way is they say that figures three through seven Displays the invention in three places two of those happen before they remove the protruding language the third place where they say it is that appendix 11 671 that is after the examiners rejected the claims twice and They're trying to explain to the examiner why they can still quote traverse his rejection why they think his rejection is wrong Then on the very next page 11 672 They say that they're nonetheless going to amend the claims to expedite prosecution and then they make the amendment that removes the protruding strips It also removes flush strips, right? It also removed flush from the shoe Would you take this position that this invention doesn't include flush strips? So so I wouldn't Judge stolen and the reason why I wouldn't say I agree. It's a fair question. The reason why thank you The reason why I wouldn't say that is because The language that's there which says that the strip is disposed within the flow control channel So that the sample fluid contacts the loading zone at a liquid pervious side of the channel means that it is flush That's what the word at is doing in that language. So it still covers the flush version of the claims It just doesn't cover the protruding version of the claims and the reason why they made that change Once again, if you look at appendix 11 672 is they wanted to emphasize that this fluid comes into direct contact with the sample fluid without going through any Wicking material. Yes as in tidings as in tidings, but the examiner also recognized that 11 634 that tidings itself The claims were originally written and under Rembrandt's current reading of the claims also allows for this contact at the sample loading zone and Because the claims as Rembrandt says aren't are comprising claims If you take their reading the exact rejection the examiner gated 11 634 would still apply his argument was I understand That you think there's this wicking material and it's different But if you fill the tidings device up enough It will still come into direct contact without that wicking material because tidings has protruding strips. I think Judge Wallach has a few more questions. Okay On page 37 of the red brief You say that contact quote contact cannot occur in the channel if the test strip and its Sample-loading zone extend outside that channel. You don't provide any citation For that assertion what evidence in the record supports that statement? I think it's the same Explanation I gave a minute ago Judge Wallach Which is that when you have the cup with a test strip sticking down and protruding out Where are they going to contact the sample-loading zone is at protrusion? They're not going to contact the sample-loading zone at the liquid pervious side And they're not going to be delivered to the sample-loading What's the liquid pervious side the liquid pervious side is So in figure six, it would be the bottom It is an opening in the flow control channel But that is where liquid can come into the flow control channel Whereas the other sides are liquid impervious because they're generally made of plastic, right? So where it will contact the sample-loading zone if you have a protruding strip Will be outside of that liquid pervious end because it will say what it be in both places Well, so I think it could be in both places But I think when you look at the prosecution is that it would be in both places I think that for contacts I think that it would be possible to potentially read that claims that way if there wasn't the prosecution history where they are making these Not narrowing. Well, I think that when you're making amendments in response to three prior art rejections it's very unlikely that you are broadening the scope of your claims to broadening it in Context it's different than tidings, right? It could be that they narrowed the claim to distinguish tidings in a particular way That doesn't even have any relevance to the infringement issue here in this case, right? That is possible But I think when you combine it with their statement at 11 672 where they say the reason they're making the amendment is to expedite Prosecution right to expedite prosecution to make it clear that they're not having Capillary action of having the fluid go up the wicking sample wicking material, right? Well, but if you're broadening the claims, you're not expediting prosecute Even if you're just broadening a single limitation You're not expediting prosecution because now you've opened up more prior art the examiner is gonna have to search for But I also think that this court has said in cases Such as Noryan and such as the you ship case that the fact that Do you think that all? Your statement you made about how people prosecute patents. Do you think you you think that's how it always is? That's a routine rule Everyone follows don't ever broaden your claims or you open up the prior art that the examiner has to consider I don't think that that's a rule that applies across the board and everything that I could I could fairly Import that into any patent prosecution history Well, but I think I think you can import it when they say at 11 672 that they are trying to expedite prosecution if they didn't say that I think that it would be hard to draw that generalization But where they make that specific statement, well, should we really be looking at the language? We're in the flow control channel, you know the language about Disposed within the flow control channel So the sample fluid contacts the sample loading zone and a liquid pervious side of the flow control channel That's really what we should be focusing on that language and what it means, right? I agree You should be focusing on that language and what I'm really focusing on what language they removed which in this case because they removed both flush and protruding from Well, I disagree a little bit judge told because I think that that sheds light on what that language that is now in the claims Means the prosecution history sheds light on that and I think that where they had to protrude from language in there Which tidings also has protruding strips and then they chose to take it out after multiple prior art rejections including a prior art rejection at 11 634 where the examiner said that just Having an intermediate structure or getting rid of an intermediate structure is not enough because tidings can also deliver The fluid without using an intermediate structure that that language is telling I'm not aware of a case from this court where someone has removed language from a claim and Has said that that didn't affect the scope of the claims I mean this court has said in cases like Ajinomoto that when the words change this court presumes that that changes the scope of the claims and this court has also said in cases like Norian and you ship that even if you think that the disclaimer wasn't necessary to overcome the prior art this court is There's no principle of patent law That the disclaimer is limited to the amendments that they had to absolutely make to overcome the prior art I understand your position. Thank you. Okay, if there are any questions about the Yes On page 7 of the yellow brief Rembrandt says that you assert and that's that that's it. Your assertion is at page 14 of the Red Brief Quote the applicants emphasized throughout prosecutions 019 patent the protecting against oversaturation by placing the strips entirely Within the flow channel was a key point of novelty of the prior art Rembrandt says that statement is quote false and supported by no record site Where exactly in the record did Rembrandt make the emphasized statements you allege? Well, so I think that where you would find that as appendix 11 686 where they say the claims as amended and this is with removing the protruding strips language the Claims as amended make clear that the invention approves upon prior devices By preventing the flooding of test strips by constructing a flow control channel around the strips and then goes on to say in the next sentence that in this respect the pervious side of the channel will limit the rate at which Sample will flow into the channel to contact the sample loading zone Now if the if by constructing it around the strips the limits the flow into the channel to contact the sample loading zone I think that that is what they are saying Judge Wallach But but once again, even if you don't think that that's directly on point I think the very fact that they removed the language from the claims is enough under Dorian and you ship in this court's cases I want to make one quick point on equivalent to unless you have other questions about other questions actually Okay on page 39 of the red brief You make the argument that it is unclear whether the applicants even recognized their amendments would exclude the device shown in figures three to seven and that's the the same Question I asked before in effect. How can you argue? There's a clear and unmistakable disclaimer if it's unclear Well, I think that it's clear and unmistakable that they were moved protruding test strips whether they recognize that that would exclude figures three through seven I don't know whether they recognize that or not But what I would know is that when they removed protruding test strips from the claim That was a clear and unmistakable disclaimer and ultimately disclaimer and the construction of the claim is objective not subjective based on what? Okay, let me ask you a housekeeping question Okay Page one of the gray brief you say if this court remands for a new trial on infringement It should also order a new trial on invalidity. Did you ask the district court for a new trial on invalidity? We didn't ask the district court for a new trial on invalidity because we had won and we didn't need to in this court's cases Haven't required you to move for a new trial if you're only asking for a conditional new trial of a claim construction that you've already Adopted is overturned. If I can just make the one point I wanted to make about equivalent versus I'll give you 30 seconds. Okay, so on My opponent on the other side draws a distinction between equilibrium and Equivalent and equal but if you look at appendix 11 686 in appendix 11 611 The claims themselves use equilibrium and equalizer as interchangeable terms what they say is that the inside and outside pressure stays in substantial equilibrium and Quote in this respect the liquid pervious side of the channel serves as a pressure equalizer And that's because the definition of equilibrium is equally balanced So whether it's equilibrium whether it's equivalent to or whether it's equal the claims The claims require exactly what the district court said if there are no further questions. Thank you your honors Well your time's up I Just wanted to clarify a point because of the beginning of my friend's argument they talked about The prosecution history being relevant. I wasn't suggesting in any way that the prosecution history was not relevant I was just saying that if we're going to find a disclaimer of the plain and ordinary meaning of the language a To find a clear and unmistakable disclaimer in the prosecution history Now with respect to the Testros being disposed within the flow control channel the claims call for the Sample fluid contacting it at the opening and that it's that contact at the opening that allows the flow control channel to function as a flow control channel the liquid closes off the opening and It prevents further Entry of fluid except by capillary action up the test strip so controlled entry of fluid that is going to allow the test to run now with respect to the amendment to remove flush with or protrudes from That did change the claim language when those Requirements were in there could be two ways the test strip was disposed within the flow control channel It would have to be either flush with or protrudes from by removing those It's only broadened the term disposed within the flow control channel Now It could protrude it could be within what's another way if it if it would contact, but it wouldn't be exactly flush with so there was flush with and Protrudes were the two options they were removed It was simply disposed within so that it contacts at the opening what if the test strip was a little bit shorter Yeah, that would be the only Thing that I could imagine would be if it didn't actually It was shorter But I guess it wouldn't matter when you flip the cup over or maybe when it's facing down and if the pressure allowed this fluid to enter enough to contact it and Close it off and operate as a flow control channel and consistently throughout the prosecution history tidings was distinguished based upon Control channel and the lack of an intermediate structure not about protruding test strips, and if I can make one point on equalize I'll give you 15 seconds. We cite on the yellow brief at page 22 a dictionary of equalize Which refers to equilibrium our proposed construction? Thank you your honors Thank you. This matter will stand submitted